### PHŒNIX COTTON OIL CO. v. CHURCHILL.

(Circuit Court of Appeals, Sixth Circuit. June 7, 1921.)

No. 3439.

Bailment ⊜18(1)—Charges for compression of cotton held governed by contract between the parties.

Plaintiff, a compress company, which established and published a tariff schedule of charges for the various customary services in connection with cotton to be handled during the ensuing season, before the season opened, made a contract with defendant, a dealer in cotton, by which in consideration of being given all of defendant's cotton for compression, it agreed to furnish certain services, in part those enumerated in its tariff schedule and in part differing therefrom, including storage, at stated prices. *Held*, that such contract was not merely a modification of plaintiff's tariff in favor of defendant, on condition of receiving all of defendant's cotton, and which otherwise did not become effective, but an independent contract, which governed all named charges for handling defendant's cotton during its term, and that defendant's agreement to give plaintiff all of its cotton was a covenant of the contract, for breach of which plaintiff could recover compensation in damages.

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action at law by A. F. Churchill against the Phœnix Cotton Oil Company. Judgment for plaintiff, and defendant brings error. Reversed.

In the cotton season of 1917–18, Churchill (hereafter called plaintiff) was operating a cotton compress establishment at Dyersburg, Tenn., and the Phœnix Cotton Oil Company (hereafter called defendant) was operating or taking the cotton from several gins in that vicinity. The record is somewhat indefinite, but it tends to show that on September 17, 1917, these parties entered into a written contract, in the form of a proposition made by plaintiff and accepted by defendant providing that: "In consideration of the Phœnix Cotton Oil Company and its allied interests, during the season of 1917–18, giving us all their Dyersburg and Dyersburg territory cotton and cotton linters for compression at Dyersburg, we will furnish them shed room for the storage of cotton, and, in addition thereto, receive and receipt for, store, handle, and protect said cotton while in our custody, for the following charges: Receiving, weighing, and sampling 10 cents per bale; storage first 30 days, free; storage after first 30 days, per month or fractional part thereof, 10 cents per bale."

During the season, about 17,000 bales of defendant's cotton were handled by the compress. Plaintiff had an established and published tariff or schedule of charges for the various customary services in connection with cotton handled, and this tariff was known to the defendant. Its first item fixed a charge of 20 cents per bale for "receiving cotton from cars, wagons, or drays, tagging, weighing, lining for examination, assorting into storage by ship marks, inserting weights in receipts given, including one month's storage," and it provided further specified charges per bale for loading on cars, for sampling, for patching, and for each of several other items of occasional serv-

ice. From month to month plaintiff rendered bills to defendant, said to be made out according to tariff schedule. It is not possible, with the aid of the record alone, to identify the items of the tariff and of the bills rendered. No charge for compression, as such, is given in the schedule, or appears in the bills rendered, excepting in three rather trifling instances. The chief item in the bills rendered is for "handling" at 25 cents per bale. This item is not found in the schedule but it may be made up of the schedule item for receiving, etc., plus sampling or some other schedule 5-cent item. There was neither objection to, nor express approval of, these bills rendered, but the defendant paid a lump sum on general account. Toward the end of the season, plaintiff notified defendant that some of defendant's cotton had been diverted from the compress; that the defendant was, therefore, not entitled to the special rates provided in the contract of September, 1917; and that plaintiff would insist upon receiving the full tariff rate for all services which had been rendered.

No further payments being made, this action was commenced in the court below by Churchill. The declaration was for services rendered under a promise to pay schedule rates, and the bills rendered were attached as specifying the particulars of the demand. The defendant pleaded that it did not owe and did not promise. The total indebtedness specified, exclusive of interest, was about $11,300. The testimony seems to be undisputed that about $1,000 of the items specified accrued before or after the season of 1917–18, and that about $2,800 was for items of services within the year covered by the schedule, but not within the special contract, leaving over $7,000 for rates claimed to be specified both in the special contract and in the general tariff. It was said that there would be a difference of about $2,300, according as the computation was made upon one or the other basis. Upon the undisputed testimony, plaintiff seems to have been entitled to a verdict for the amount of the out of season charges, in addition to those not reached by the special contract, and after making proper application of the general payment.

The existence of the special contract appeared soon after the opening of plaintiff's case. Defendant thereupon and thereafter insisted that the case should be dismissed, or a verdict for the defendant directed, because the contract declared upon was not the true contract between the parties, and the action should have been planted upon the special contract. It appeared that the defendant intended to claim that its cotton did not receive the protection and shelter specified by the special contract, and that damages had thereby resulted, which it would be entitled to offset in an action brought on the special contract, and the balance of which in its favor it would be entitled to recover in that or some other action. It was thus argued that the objection to proceeding further under the existing pleadings was not merely formal, but was essential to preserve the defendant's rights. The court below took the view that the tariff schedule should be treated as the main basis of contract, and that the special contract between the parties was one for a variation of some of the rates named in the general tariff, on condition that all the cotton for the season was furnished, and, being further of the opinion that the undisputed evidence showed the nonperformance of this condition, whereby the provision for a special rate never became effective, directed a verdict for the plaintiff for the full amount claimed.

John D. Martin, of Memphis, Tenn., for plaintiff in error.

C. L. Sivley, of Memphis, Tenn. (Sivley, Evans & McCadden, of Memphis, Tenn., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). The assignments of error which complain of the refusal to direct a verdict for the defendant would necessarily be overruled, even if they were in due form. Plaintiff was entitled to a verdict upon portions of the

demand sued for. All the assignments of error are also informal, and might be disregarded, in that they are directed to the action of the court in overruling a motion for new trial, and not to the ruling of the court upon the trial. Error cannot be assigned upon the refusal to grant a new trial, unless in exceptional instances not here present. However, counsel's intent to obtain a review of the rulings on the trial is so evident that we are inclined to overlook this informality in the assignment, and consider an exception to the admission of evidence, which was properly saved on the trial, and as to which error is assigned in this indirect manner. It was conceded that 100 bales of Phœnix cotton, from the Tiptonville gin within the prescribed territory, had not been sent to the Churchill compress, but had been shipped away in uncompressed form. The court took the view that, as matter of law, the special contract was merely that a certain modification would be made in the tariff rates upon the full performance of a certain condition, that the diversion of these 100 bales demonstrated material nonperformance of the condition, and that therefore the special contract was to be eliminated. Accordingly, the defendant's evidence, offered to show that plaintiff's damage from this nonperformance was only nominal, was rejected. This ruling necessarily opens the subject of the character of the special contract, and this, in turn, leads to a consideration of the plaintiff's right to recover upon so much of his demand as was within the special contract, if that was in force. It is therefore permissible for us to consider these subjects, reaching them only through the roundabout way afforded by an exception to the admission of evidence; but we think it desirable to do so, since there must be a new trial, and the questions will arise again.

We are confident that the special contract could not, as matter of law, upon this record, be rightly held to be merely a conditional modification of the tariff rates. If it had been collateral to an initiated course of business under the tariff, or had been only for a special price to be granted upon one or more of the items of service covered by the tariff, it might have this conditional character; but we cannot say that this was its substance. It preceded the doing of any business for this season; it did not include all of the particulars of service specified in the first item of this schedule, neither tagging, nor lining, nor assorting; and it did cover two matters not named anywhere in the schedule, furnishing shed room for storage, and protecting the cotton while in plaintiff's custody. It also covered an agreement to "handle," whatever that may mean. It may be that, according to the customs of the business or the accepted trade meaning of words, promises to protect and furnish shed room for storage included nothing in addition to the obligations of the plaintiff as bailee under the general tariff, and that the tagging, lining, and assorting were negligible; but the record does not demonstrate this identity of obligation, and the natural inference seems to be the other way. We are clear, also, that this lack of identity, taken in connection with the whole record, at least tended to show that the provision about "giving us all your cotton" was not a mere condition, but was a covenant on the part of the defendant. As to this conclusion, a fuller dis-

closure of the facts regarding the execution of the contract and the circumstances might be material, but the conclusion was not wholly inadmissible upon this record. Of course, if there was a covenant, rather than a condition, and there was thus a bilateral contract, its breach by defendant, in this trifling degree, would not justify its entire repudiation by the plaintiff, but would only call for deduction of the profits which plaintiff lost through the diversion of the 100 bales. The record suggests other breaches of the same covenant, but they cannot be intelligently considered, because their existence did not appear.

If this contract was not rightly construed as merely one for a conditional modification of the general tariff, it necessarily follows that it governed and controlled the liability of the defendant for those services covered thereby, and the plaintiff could not recover upon an implied contract to pay the regular tariff for a class of service covered by one of the items thereof, in the face of an express specific contract for service of the same general class, but different in detail and for a different price. This conclusion is confirmed by observing that the special contract was for the general and primary service which would be required as to all the cotton and which actually constituted nearly three-fourths of the items claimed for this season, while the general tariff had sole application only to special items that might or might not be required as to any particular lot of cotton, and that, in a majority of instances, were not called for. If the facts, as more fully developed on the new trial, lead to the finding by the court or jury that there was not identity of obligation under the special contract and under any parts of the general tariff, and that the special contract was, therefore, not a mere conditional rate modification, it must certainly result that the plaintiff cannot recover for the items covered by the special contract until he amends his pleadings and declares thereon, or at least so far discloses it in his declaration as to make a basis for defendant to counterclaim any damage it may prove.

For the error pointed out, the judgment must be reversed, and the case remanded for a new trial in accordance with this opinion.